UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DARRYL BULLOCK,

                Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-7364 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Darryl Bullock, proceeding *pro se*, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Supplemental Security Income ("SSI") and Disability Benefits ("DIB"). The Court construes Plaintiff's complaint as a motion for judgment on the pleadings that seeks to reverse the Commissioner's decision and/or remand for further administrative proceedings.[1] Also before the Court is the Commissioner's motion for judgment on the pleadings, which seeks to affirm the SSA's decision to deny benefits. For the reasons that follow, the Court grants Plaintiff's motion and denies the Commissioner's motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I.    Procedural History

---

[1] "Where, as here, a social security claimant challenges his denial of benefits as a *pro se* plaintiff, precedent in this Circuit indicates that 'even when the plaintiff fails to file a brief, courts still ought [to] examine the record to determine whether the hearing officer applied the correct legal standards and reached a decision based on substantial evidence.'" *Portalatin v. Comm'r of Soc. Sec.*, No. 18-CV-920 (PKC), 2019 WL 4674785, at *1 n.2 (E.D.N.Y. Sept. 25, 2019) (alteration in original) (quoting *Vaughn v. Colvin*, 116 F. Supp. 3d 97, 101–02 (N.D.N.Y. 2015)).

On June 18, 2015, Plaintiff filed applications for SSI and DIB, claiming that he was disabled as of December 31, 2012.[2]   (Administrative Transcript ("Tr."[3]), Dkt. 8, at 152–53 (application for DIB); *id.* at 154–62 (application for SSI).)   His applications were denied on September 24, 2015.   (*Id.* at 99–107 (denying DIB application); *id.* at 108–15 (denying SSI application).)  After requesting a hearing (*id.* at 116–17), Plaintiff appeared[4] before Administrative Law Judge ("ALJ") Kevin Kenneally via videoconference on July 31, 2017 (*id.* at 13).   On December 4, 2017, the ALJ found that Plaintiff was not disabled.   (*Id.* at 10–33.)   The ALJ's decision became final on October 22, 2018, when the SSA Appeals Council denied Plaintiff's request to review that decision.   (*Id.* at 1–6.)   This timely appeal followed.[5]   (*See generally* Complaint ("Compl."), Dkt. 1.)

---

[2] In his Complaint, Plaintiff claims that his disability began on December 4, 2017.  The Court interprets this as a typographical error, as Plaintiff refers throughout the record to December 31, 2012 as the date on which he became disabled.  (*Compare* Complaint ("Compl."), Dkt. 1, at 1, *with, e.g.*, Tr. at 152–62.)  Furthermore, the Administrative Law Judge's decision is dated December 4, 2017.  For the purposes of this decision, the Court assumes that Plaintiff, consistent with his initial applications for SSI and DIB, alleges that his disability began on December 31, 2012.

[3] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[4] Though pursuing this appeal *pro se*, Plaintiff was represented by counsel at the hearing before the ALJ.  (*See* Tr. at 34.)!

[5] According to Title 42, United States Code, Section 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to

## II.     The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The plaintiff bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."    20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii).   An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities."  *Id.* § 416.922(a).  If the impairment is not severe, then the plaintiff is not disabled.  In this case, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since December 31, 2012, the alleged onset date."  (Tr. at 16.)  The ALJ also found that Plaintiff had the following severe impairments: schizoaffective disorder; cervical spine degenerative disc disease with disc herniation, stenosis, and foraminal narrowing at C6; lumbar spine degenerative disc disease status post laminectomy; left shoulder rotator cuff tendonitis and joint effusion; right knee meniscal tear with tendinopathy and joint effusion; obesity; and diabetes.  (*Id.*)

Having determined that Plaintiff had satisfied his burden at the first two steps, the ALJ proceeded to the third step and determined that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), including 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  (*Id.*)

---

the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The final decision was issued October 22, 2018 (Tr. at 1), and the Complaint was filed on December 21, 2018 (Compl., Dkt. 1)—60 days later (without factoring in the five-day mailing presumption)—rendering this appeal timely.

Moving to the fourth step, the ALJ found that Plaintiff maintained residual functional capacity ("RFC")[6] to perform "sedentary work,"[7] as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that the claimant:

> (1) can occasionally push, pull, or operate foot controls with the left lower extremity; (2) can never push, pull, or operate foot controls with the right lower extremity; (3) can never push, pull, or operate hand controls with the left upper extremity; (4) can occasionally push, pull, or operate hand controls with the right upper extremity; (5) can occasionally reach overhead with the left upper extremity; (6) can frequently reach in all other directions with the left upper extremity; (7) can occasionally climb ramps and stairs; (8) can never climb ropes, ladders, and scaffolds; (9) can occasionally balance, stoop, kneel, crouch, and crawl; (10) can never be exposed to unprotected heights, moving mechanical parts, and operating a motor vehicle; (11) is limited to performing simple routine tasks; (12) is limited to making simple work-related decisions; and (13) [can] only [have] occasional interaction with the general public, co-workers, and supervisors.

(*Id.* at 18–19.) The ALJ then proceeded to step five to determine whether Plaintiff—given his RFC, age, education, and work experience—had the capacity to perform other substantial gainful work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(v). The ALJ determined that Plaintiff was unable to perform his past relevant work as a barber (Tr. at 26), but found that, given Plaintiff's RFC, age, education, and work experience, he could make the adjustment to, and perform work as, a document preparer, type-copy examiner, and/or ink printer (*id.* at 27–28). The

---

[6] To determine a plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[7] According to the applicable regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

ALJ concluded that Plaintiff was not disabled within the meaning of the SSA regulations.  (*Id.* at 28.)

## STANDARD OF REVIEW

Unsuccessful claimants for SSI and DIB under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151 (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and alterations omitted).  In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (internal quotation marks and citation omitted).  However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## DISCUSSION

Plaintiff contends that the ALJ's decision was erroneous, not supported by substantial evidence, and/or contrary to the law.  The Court agrees.

## I.  The Sufficiency of the Record on Plaintiff's Psychiatric Disabilities

The Court finds that the ALJ failed to properly develop the administrative record with respect to Plaintiff's psychological disabilities, as the ALJ did not seek a medical opinion from Plaintiff's treating psychiatrist and did not seek treatment notes from Plaintiff's mental health therapist.

"Before determining whether the Commissioner's conclusions are supported by substantial evidence[,] . . . '[the Court] must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (second and third alterations in the original) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  When "an ALJ fails to adequately develop the record in reaching a conclusion on a claimant's residual functional capacity, the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence." *Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *18 (E.D.N.Y. Sept. 23, 2015); *see Mantovani v. Astrue*, No. 09-CV-3957 (RRM), 2011 WL 1304148, at *4 (E.D.N.Y. Mar. 31, 2011) ("When an ALJ fails to adequately develop the record . . . the Court need not—indeed, cannot—reach the question of whether the [ALJ's] denial of benefits was based on substantial evidence." (internal quotation marks and citation omitted) (second alteration in original)); *Jones v. Apfel*, 66 F. Supp. 2d 518, 542 (S.D.N.Y. 1999)); *cf. Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").  An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case."  *Green v. Astrue*, No. 08-CV-8435 (LAP) (FM), 2012 WL 1414294, at *14 (S.D.N.Y. Apr. 24, 2012) (citing *Moran*, 569 F.3d

at 114–15), *report and recommendation adopted*, 2012 WL 3069570 (S.D.N.Y. July 26, 2012); *see also Alvarez*, 2015 WL 5657389, at *14 (quoting same).

Here, Plaintiff has been diagnosed with schizoaffective disorder, depression, and anxiety. (Tr. at 509, 697.)  The record documents Plaintiff's persistent auditory command hallucinations, including the "voices telling [him] to kill [him]self and jump off [the] roof." (*Id.* at 538; *see also id*. at 612 (documenting the "voice in [Plaintiff's] head t[elling] him to kill himself"); *id* at 698 (describing how Plaintiff "hears voices all the time [telling him] to harm himself and others").) Plaintiff also has a history of psychiatric hospitalizations and has been admitted at least three times to the hospital for attempting suicide.  (*See id.* at 538, 624, 689, 698.)  He has also exhibited aggressive behavior toward others.  (*Id.* at 698.)  On at least two occasions, Plaintiff's suicide attempts were provoked by or occurred at the same time as auditory hallucinations directing Plaintiff to kill himself.  (*See id.* at 538, 624.)  On another occasion, the New York City Police Department ("NYPD") was called, and tasered Plaintiff after he had barricaded himself in a room with a knife for hours.  (*See id.* at 689.)

In addition to treatment notes from Plaintiff's psychiatric hospitalizations, the record contains several psychiatric evaluations of Plaintiff from physicians who met with Plaintiff once or simply reviewed Plaintiff's records.  (*See id.* at 93–107 (9/24/2015 agency evaluation of Dr. Sue Shapiro based solely on Plaintiff's file); *id.* at 697–99 (9/10/2015 consultative examination of Dr. David Lefkowitz, with notes from singular meeting with Plaintiff); *id.* at 642–60 (5/24/2014 evaluation by Dr. Artur Mushyakov with notes from singular meeting); *id.* at 719–38 (7/14/2016 evaluation by Dr. Lavonna Branker with notes from singular meeting); *id.* at 665–70 (11/06/2014

evaluation by Dr. Robert London with notes from singular meeting); *id.* at 735–38 (7/18/16 evaluation by Dr. Fazil Hussain with notes from singular meeting).)[8]

However, despite numerous references in the record to Plaintiff receiving psychiatric treatment and being prescribed psychiatric medication (*see, e.g.*, *id.* at 47, 234, 282, 335), the record does not contain progress notes from Plaintiff's treating psychiatrist or any other psychiatrist or mental health professional who treated or saw Plaintiff.  In a September 2015 evaluation note, consultative physician Dr. Lefkowitz stated that Plaintiff "sees Dr. Cotter once a week and Dr. Long once a month for medications including Risperdal."[9]  (*Id.* at 699; *see also id.* at 276 (SSA Claimant's Recent Medical Treatment form listing Dr. Long as a treating physician).) However, the record does not contain any notes or opinions from Dr. Long, presumably Plaintiff's prescribing psychiatrist.  While the record does contain treatment notes from Dennis Cotter, a licensed clinical social worker at the St. George program at Richmond Medical Center, for the period in January 2015 immediately after Plaintiff was admitted to the hospital for "suicidality" and barricading himself in a room with a knife, the notes do not continue past January 2015.  (*Id.* at 684–96.)  Nor does the record contain opinions from the other doctors who are mentioned in the

---

[8] The Commissioner's Memorandum of Law in Support of the Defendants' Motion for Judgment on the Pleadings ("Commissioner's Brief") refers to Drs. Branker and Mushyakov as Plaintiff's "treating sources."  (Commissioner's Brief, Dkt. 13, at 17.)  However, there is no evidence in the record indicating that Plaintiff saw either doctor more than once.  (*See* Tr. at 642–60, 719–38.)  Rather, the record indicates that both doctors evaluated plaintiff as part of WeCARE. (*Id.*)  WeCARE is a "New York City Human Resources Administration public assistance program designed to help low-income clients with medical and/or mental-health issues find employment and/or apply for disability benefits."  *McColl v. Saul*, No. 18-CV-04376 (PKC), 2019 WL 4727449, at *3 n.4 (E.D.N.Y. Sept. 27, 2019) (internal quotation marks and citation omitted).  Drs. London and Hussain appear to have evaluated Plaintiff through the WeCARE program as well. (*See* Tr. at 665–70, 735–38.)

[9] Where the health care professional's first name is not identified, it is because it is not reflected in the record.

records or notes as prescribing Plaintiff psychiatric drugs or opining on his ability to work. (*See, e.g.*, *id.* at 227 (referring to "[Plaintiff's] psychiatrist, Dr. Chenthitta at Bellevue Hospital Center, [who] diagnosed and documented the [Plaintiff]'s inability to perform past work or other new work"); *id.* at 634–35 (noting that "Dr. Walter" prescribed Risperdal and Cymbalta, and Plaintiff had received mental health services at the Staten Island Mental Health Society).)[10]

"The duty to develop a full record compels the ALJ to obtain from the treating source expert opinions as to the nature and severity of the claimed disability. . . . Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties." *Alvarez*, 2015 WL 5657389, at *14 (internal quotation marks, citation, and alterations omitted). "Efforts to ensure that the record contains all relevant evidence from treating sources before favoring the opinion of a consultative examiner [are] especially critical when the claimed disability pertains to a plaintiff's mental health." *Valentine v. Comm'r of Soc. Sec.*, No. 18-CV-3985 (MKB), 2019 WL 3974576, at *14 (E.D.N.Y. Aug. 21, 2019).[11]  Here, remand is appropriate because the ALJ relied upon the

---

[10] The record does contain notes from a Dr. Robert Walter from April 2014 regarding one of Plaintiff's hospital admissions/suicide attempts. (*See* Tr. at 604–627.)  It is not clear from the record how long Dr. Walter continued to treat Plaintiff after Plaintiff's hospitalization.

[11] It is not clear from the record in this case that records from Dr. Long (or any other treating psychiatrists) were ever requested, despite Dr. Long being mentioned in Dr. Lefkowitz's report and Plaintiff's SSA Recent Medical Treatment form.  Moreover, even if the records were theoretically included in the scope of one of the subpoenas issued to medical institutions (*see* Tr. at 248–264), an ALJ has a duty to follow up and request relevant records even where they have not been provided in response to a subpoena, *see Valentine*, 2019 WL 3974576, at *14 (finding that the subpoena issued to a hospital for relevant psychiatric records "did not relieve the ALJ of her duty to develop the record"); *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 451 (S.D.N.Y. 2004) ("Merely issuing a subpoena by mail is not the legal equivalent of making 'every reasonable effort' to obtain the medical reports." (citing 20 C.F.R. § 404.1512(d))).  This is true even where the plaintiff is represented by counsel. *See Lopez v. Comm'r of Soc. Sec.*, 622 F. App'x 59, 60 (2d Cir. 2015) (summary order) ("Whether dealing with a pro se claimant or one represented by counsel, the ALJ must 'develop [the claimant's] complete medical history.'" (quoting 20 C.F.R. § 404.1512)); *Davis v. Colvin*, No. 15-CV-479 (MJR), 2016 WL 4708515, at *8 (W.D.N.Y. Sept. 9, 2016) ("Given the significance of the missing records and the impact their absence had on the

opinions of doctors who met with Plaintiff once or, in the case of Dr. Shapiro, not at all,[12] and neglected to obtain notes or opinions from Plaintiff's treating physicians and therapist,[13] despite records clearly indicating that Plaintiff was receiving long-term psychiatric treatment.  *Cf. id.* at *15 (finding remand "appropriate in view of the ALJ's failure to adequately develop the record by failing to make an additional effort in securing treatment notes"); *Noviello v. Comm'r of Soc. Sec.*, No. 18-CV-5779 (PKC), 2020 WL 353152, at *8 (E.D.N.Y. Jan. 21, 2020) (remanding case where "[a]lthough the ALJ did not 'ignore' the medical evidence in th[e] case, he failed to solicit medical opinion evidence from many of the treating physicians referenced in notes from office visits").

## II.    Weighing the Evidence of Plaintiff's Psychiatric Disabilities

"Where, as here, an ALJ fails to adequately develop the record in reaching a conclusion on a claimant's residual functional capacity, the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence." *Alvarez*, 2015 WL 5657389, at *18.  Nevertheless, the Court addresses several aspects of the ALJ's consideration of the evidence so that on remand, the ALJ may properly weigh the fully developed evidence.

---

ALJ's decision, the ALJ should have tried to obtain the records on his own after not hearing from [the plaintiff's] counsel.  By not doing so, the ALJ created a gap in the record that necessitates remand."); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  To the extent it was unclear from the record who Plaintiff's long-term treating physicians were, the Court notes that the ALJ also failed to ask Plaintiff any clarifying questions about his psychiatric treatment during Plaintiff's hearing testimony.  (*See* Tr. at 37–48.)

[12] And, as discussed *infra*, to the extent the ALJ relied on these non-treating medical sources, he did so selectively, citing and relying only on those portions of these sources' opinions that supported the ALJ's conclusions, and disregarding or omitting those portions that did not, on the basis that these parts of the sources' opinions were purportedly inconsistent with the evidence.

[13] Where the medical evidence is contradictory or insufficient, the ALJ can solicit information from a treating therapist as well as the treating physician.  *Corrigan v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-5686 (PKC), 2019 WL 5212850, at *3 n.5 (E.D.N.Y. Oct. 16, 2019) (directing the ALJ to solicit information from Plaintiff's therapist on remand).

10

Generally, the opinions of consultative examiners are entitled to less weight than that of a treating physician under the treating physician rule,[14] which "recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once." *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 629 (S.D.N.Y. 2006). The treating physician rule provides that "the opinion of a [plaintiff]'s treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). This "rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time." *Santiago*, 441 F. Supp. 2d at 629.

Here, because the ALJ did not obtain the medical records of Plaintiff's treating psychiatrist, the ALJ could not, and did not, consider that treating physician's opinions in reaching the conclusion that Plaintiff's psychological impairments were not severe and that Plaintiff retained the RFC to perform sedentary work. Instead, the ALJ based his opinion primarily on portions of the opinions of the multiple consultative examiners discussed above who met Plaintiff either once or not at all. (*See* Tr. at 23–26.) In determining what weight to give each of these opinions, the ALJ relied upon his own assessment of whether those opinions were consistent or inconsistent with the objective medical evidence in the record, which the ALJ found demonstrated that Plaintiff's psychological issues had improved with treatment. (*Id.* at 22.) This objective medical

---

[14] Although "[t]he current version of the [Social Security Act's] regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed in June 2015 (*see* Tr. at 152–53, 154–62), as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-00290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520c.

evidence included evidence that Plaintiff had at various points presented with limited psychiatric symptoms:

> [M]edical providers noted on multiple occasions that the claimant presented to his appointment with no unusual anxiety or evidence of depression, and that the claimant did not exhibit difficulties in concentrating or psychiatric symptoms. Medical professionals also noted that the claimant had intact memory functioning, and that the claimant denied any current hallucinations (audio or visual) and suicidal/homicidal ideations, plans, or intent.  In fact, providers noted that the claimant was cooperative, and that he had a neutral mood, full affect, fair judgment, and fair insight.

(Tr. at 22 (record citations omitted).)

Based on these assessments of consistency with the objective medical evidence, the ALJ gave "great weight" to the objective findings of Dr. Lefkowitz (*id*. at 22–23), "some weight" to the opinions of Dr. Mushyakov and Dr. Branker (*id*. at 25–26), "some weight" to the opinion of Dr. Shapiro (*id*. at 23), and "little weight" to the opinions of Dr. Hussain and Dr. London (*id*. at 20, 24, 25.)  For example, the ALJ discounted the opinions of Drs. Hussain and London that Plaintiff's mental disabilities restricted his daily activities in a way that prevented adherence to a regular work routine and employment, because the ALJ deemed their opinions inconsistent with the objective evidence.  (*See id.* at 20, 24, 25.)  Similarly, the ALJ accorded only "some weight" to the opinion of Dr. Mushyakov, which the ALJ suggested was internally "inconsistent," because while "Dr. Mushyakov opined that the [Plaintiff] would be unable to work," the doctor's "assessed limitation [of Plaintiff's ability to work] only include[d] the restriction that the [Plaintiff] should work in a low stress environment."  (*Id.* at 25.)  The ALJ also seemed to find Dr. Mushyakov's opinion that "[Plaintiff] had psychological issues, which restricted [his] ability to perform activities of daily living, adhere to a regular work routine, and engage in employment activities," to be inconsistent with Dr. Mushyakov's statements that "the claimant did not have any cognitive or

12

interpersonal deficits, and . . . [his] only restriction would be the need to work in a low stress environment." (*Id.*)

In reaching these conclusions, "the ALJ appears to have implicitly considered ways in which [these] opinion[s] w[ere] not supported by the objective medical evidence and testimony, but . . . erroneously failed to acknowledge the ways in which [their] opinion[s] *w[ere]* consistent with the objective medical evidence." *Alvarez*, 2015 WL 5657389, at *15 (emphasis in original). While the record certainly contains evidence that the Plaintiff on occasion presented with limited symptoms, it also, as discussed above, contains ample evidence that Plaintiff presented at multiple points with severe symptoms. For instance, the ALJ notes briefly that Plaintiff was hospitalized for suicide attempts in 2013 and 2014 (*see* Tr. at 22) but neglects to note that Plaintiff was again hospitalized for suicidal ideation in January 2015 after having been removed from his house by the NYPD hostage negotiator. (*Id.* at 689.) Treatment notes from that episode describe Plaintiff as "a high risk to self and others," and as having recurrent major depression with psychotic episodes. (*Id.* at 689, 692.) Notably, some of the record examples the ALJ cites to in order to show that Plaintiff presented without symptoms and improved with treatment occurred before this incident. (*See, e.g.*, Tr. at 22 (citing to Tr. at 574 which contains treatment notes from 2013).) Plaintiff continued to report episodes of command hallucinations after the hospitalization as well. (*See id.* at 722 (July 14, 2016 notes describing Plaintiff's "AH [auditory hallucinations] telling him [] people are trying to hurt him, and that he should hurt people if they hurt him. The last episode was ~ 1 wk. ago").)

"Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a

[plaintiff] is capable of working.")).  *McColl*, 2019 WL 4727449, at *13 (citation omitted) (alterations in original).  Nor is it "proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination."  *Noviello*, 2020 WL 353152, at *6 (citation omitted).  By discrediting the opinions of professionals because they were inconsistent with the ALJ's reading of the evidence, the ALJ "improperly substituted his own medical opinion for that of the medical expert[s]."  *McColl*, 2019 WL 4727449, at *11 (citation omitted); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.").

Furthermore, the ALJ failed to discuss a key aspect of Plaintiff's alleged disability by omitting discussion of Plaintiff's hallucinations.  The ALJ's decision mentions only instances in which providers described Plaintiff as not experiencing hallucinations (Tr. at 22, 23, 24), and simply ignores the numerous instances in the record in which medical providers documented Plaintiff's severe hallucinatory episodes.  For instance, Dr. Lefkowitz, to whose findings the ALJ purports to grant "great weight," indicated that Plaintiff's prognosis is "fair to poor" and described Plaintiff as follows:

> [Plaintiff] is a 45-year-old separated male who has been diagnosed with schizoaffective disorder and tends to get paranoid, hears voices telling him to hurt himself and others, not to a degree of paranoid schizophrenia fully.  There is some semblance of reality but there are also emotional mood swings that come into [play] severely.  He tends to get very irritable and depressed and at times wants to harm himself and others as well.

(*Id*. at 699.)  The ALJ, however, completely omits Dr. Lefkowitz's description of Plaintiff's auditory command hallucinations and desires to harm himself or others in his characterization of Dr. Lefkowitz's opinion, focusing instead on Plaintiff's irritability and depression: "Dr. Lefkowitz diagnosed the claimant with schizoaffective disorder, but noted that the claimant's condition did

not rise to a degree of paranoid schizophrenia.  Dr. Lefkowitz also noted that the claimant reported

emotional mood swings (in the severity level), and that the claimant would tend to get irritable and

depressed."  (*Id.* at 23.)  Similarly, when describing two of Plaintiff's hospitalizations for suicide

attempts, the ALJ did not discuss Plaintiff's hallucinations:

> The claimant's records show that he underwent hospitalization for a suicide attempt
> in 2013.  At that time, the records indicate that he attempted to cut his wrists.  The
> claimant also underwent hospitalization in April 2014 for 5 days.   Medical
> professionals noted that the claimant once again attempted to superficially cut his
> wrists, and that the claimant described having a sad mood, loss of interest, and
> hopelessness.

(*Id.* at 22 (internal record citations omitted).)   Contemporaneous notes from providers, however,

document that at the time of both attempts, Plaintiff hallucinated voices commanding him to kill

himself.  (*Id.* at 538, 624.)  This evidence is further consistent with the notes of Dr. Mushyakov,

who noted that Plaintiff had experienced "visual/auditory hallucinations on/off for 2 yrs" (*id.* at

644), and Dr. Branker, who in July 2016 described Plaintiff as having had auditory hallucinations

about harming himself and others the week before (*id.* at 722).

As discussed *supra*, "[i]t is not proper for the ALJ to simply pick and choose from the

transcript only such evidence that supports his determination."  *Noviello*, 2020 WL 353152, at *6

(citation omitted).   The ALJ's failure to even address the evidence of Plaintiff's persistent

hallucinations requires remand.  *See Ellis v. Astrue*, No. 09-CV-4333 (DLI), 2011 WL 1240103,

at *9 (E.D.N.Y. Mar. 30, 2011) ("An ALJ must acknowledge all evidence that supports a claim of

disability and, if he concludes otherwise, he must explain why the pertinent evidence does not

justify the result sought by the claimant.  Furthermore, although the ALJ is not required to reconcile

every ambiguity and inconsistency of medical testimony, we cannot accept an unreasoned rejection

of evidence that supports plaintiff's position.") (internal quotation marks, alterations, and citations

omitted).   Moreover, it goes without saying that reports that Plaintiff did not at certain times

experience hallucinations do not, without more, provide a basis for concluding that Plaintiff is capable of working or that he does not experience debilitating hallucinations at other times. *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019).

Similarly, to the extent the ALJ found that the opinions of Dr. London and Dr. Mushyakov that Plaintiff could not work were inconsistent with statements by providers that Plaintiff was able to perform acts of daily living ("ADLs") and to walk or take public transit to his appointments, that conclusion is inconsistent with the Commissioner's regulations. "First, a claimant's mere ability to use public transportation is not a factor that should be considered in determining a claimant's limitations in social functioning." *Emsak v. Colvin*, No. 13-CV-3030 (PKC), 2015 WL 4924904, at *14 (E.D.N.Y. Aug. 18, 2015). More generally, however:

> an assessment of a plaintiff's [ADLs] without any explanation as to how those ADLs qualify Plaintiff for employment, does not adhere to the Commissioner's regulations that recognize that individuals with psychiatric disabilities may appear to adequately function in a restricted setting, but still may be unable to meet the demands of a competitive workplace environment.

*McColl*, 2019 WL 4727449, at *11 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (C)(3)); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (C)(3) ("[The Commissioner] must exercise great care in reaching conclusions about [the plaintiff's] ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on [the plaintiff's] ability to complete tasks in other settings that are less demanding, highly structured or more supportive.")). Indeed, as the SSA's own regulations recognize,

> [t]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally ill may have difficulty meeting the requirements of so-called "low-stress" jobs.

16

SSR 85–15, 1985 WL 56857, at *6 (Jan. 1, 1985); *see Moss v. Colvin*, No. 13-CV-731 (GHW) (MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job."). In this case, the ALJ did not take the requisite care in concluding, contrary to the opinions of multiple physicians, that Plaintiff was qualified for employment based in part upon his performance of ADLs.

## III.     The ALJ's Credibility Determination

The Court also finds that the ALJ's determination that Plaintiff's statements were not credible was not based on substantial evidence. SSA regulations obligate an ALJ "to take the [plaintiff]'s reports of pain and other limitations into account, [but the ALJ] is not required to accept the [plaintiff]'s subjective complaints without question." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (summary order) (alterations and internal quotation marks omitted) (quoting, *inter alia*, *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). "The ALJ will consider all of the available medical evidence, including a [plaintiff]'s statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285 (MKB), 2014 WL 4273321, at *12 (citing *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012) (summary order)). "To the extent that a [plaintiff]'s allegations of [a symptom] 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Id.* (quoting *Meadors v. Astrue*, 370 F. App'x 179, 184 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii))). Credibility determinations "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Atwater v. Astrue*, No. 10-CV-420

(WMS), 2012 WL 28265, at *6 (W.D.N.Y. Jan. 5, 2012) (internal quotation marks and citation omitted), *aff'd*, 512 F. App'x 67 (2d Cir. 2013) (summary order).

In this case, the ALJ found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  However, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Tr. at 20.)  The ALJ highlighted that despite Plaintiff's statements (and those of his providers) regarding his limited ability to travel because of his "paranoia, depression, and anxiety (especially in crowds)," Plaintiff was able to walk and take public transit to his appointments.  (*Id.* at 19, 22.)  As discussed above, Plaintiff's ability to sometimes take public transit or perform daily tasks does not evince his ability to work, or even to travel as needed for work.  The ALJ does not discuss specifically Plaintiff's testimony that he experiences schizophrenic episodes "four or five times a week" (*id.* at 39), two to three depressive episodes per week (*id.* at 39–40), and severe suicidal thoughts "three [to] four times a week" while on his medication, and more often when not (*id.* at 40).  Because the ALJ did not address this testimony, he failed to "make clear to the individual and to any subsequent reviewers the weight [he] gave to the individual's statements and the reasons for that weight."  *McColl*, 2019 WL 4727449, at *13 (internal quotation marks and citation omitted).  However, to the extent the ALJ viewed this testimony as unsupported in the record and thus undermining Plaintiff's credibility, the Court notes that "inconsistencies [in] Plaintiff's reporting, or the occurrence, of hallucinations do[] not provide a basis for discrediting his testimony regarding his symptoms[,] [as] the fact that Plaintiff did not experience hallucinations on a constant or predictable basis certainly does not undermine the credibility of his reports about experiencing hallucinations."  *Id.* (record citations omitted).  In sum, the Court finds that the ALJ's credibility

18

determination regarding Plaintiff's testimony as to his symptoms was not supported by substantial evidence.

## IV.     The Matter Is Remanded For Further Proceedings Consistent With This Opinion

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard, a court should remand the case to the Commissioner for the further development of the record." *Emsak*, 2015 WL 4924904, at *17 (internal quotation marks and citation omitted).  The Court here remands the case based on the ALJ's failure to sufficiently develop the record and obtain evidence from Plaintiff's treating psychiatrist and therapist, as well as the ALJ's improper weighing of the existing medical opinion evidence.

Because the Court remands on these bases, it does not reach a conclusion as to whether the ALJ committed error in evaluating Plaintiff's physical disabilities.  However, the Court finds it likely that the ALJ also failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Amit Schwartz, under the treating physician rule, regarding Plaintiff's physical impairments.  As discussed above, "the opinion of a [plaintiff]'s treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)).  The Second Circuit has explained that an ALJ who does not accord controlling weight to a treating physician's opinion must consider and discuss several factors, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA]'s attention that tend to support or contradict the opinion.  The regulations also specify that the Commissioner will always give good reasons in [his] notice of determination or decision for the weight [he] gives claimant's treating source's opinion.

*Halloran v. Barnhardt*, 362 F.3d 28, 32 (2d Cir. 2004) (*per curiam*) (internal quotation marks and citations omitted).

Here, the ALJ gave Dr. Schwartz's opinion that Plaintiff could not lift/carry any amount, could sit/stand/walk for only an hour in an 8-hour workday, and that Plaintiff would need to take unscheduled breaks every 15 minutes due to his constant symptoms, "little weight." (Tr. at 26.) The ALJ justified this determination based on: (1) Dr. Schwartz having treated Plaintiff for three months, but opining about a longer history, (2) Dr. Schwartz's opinion being "inconsistent" with objective medical evidence that Plaintiff had on multiple occasions a "normal or negative musculoskeletal examination, and [] did not exhibit any muscle weakness"; and (3) Dr. Schwartz's opinion being inconsistent with Plaintiff's ADLs, which included walking and taking public transit to appointments. (Tr. at 22.) In contrast, the ALJ gave "some weight" to the opinions of Drs. Mushyakov and Branker, who opined that the Plaintiff had fewer physical limitations. (*Id.* at 24–25.) However, it is not clear that either Dr. Mushyakov (*id.* at 642–60) or Dr. Branker (*id*. at 719-38) relied on any objective medical evidence beyond the exams performed that day, whereas Dr. Schwartz clearly reviewed Plaintiff's test results. (*See id.* at 567 (Dr. Schwartz notes regarding MRI of Plaintiff).) It is error for the ALJ to rely on unsupported opinions of consulting physicians where the treating physician's opinion is supported by evidence.[15] *See Murphy v. Saul*, No. 17-CV-1757 (PKC), 2019 WL 4752343, at *7 (E.D.N.Y. Sept. 30, 2019). Nor is it clear what opinion evidence the ALJ relied on beyond that of Drs. Mushyakov and Branker in discounting Dr. Schwartz's opinion. (*See* Tr. at 24–26.) To the extent the ALJ rested his conclusion on his own interpretation of the medical evidence, that too would be error. *Murphy*, 2019 WL 4752343, at *7.

---

[15] The Court notes that the opinion of Dr. Schwartz is also consistent with Plaintiff's own testimony regarding the severity of his physical symptoms. (*See* Tr. at 41–46.)

While Dr. Schwartz's opinion predates that of Drs. Mushyakov and Branker and so arguably does not contain sufficient evidence about Plaintiff's subsequent condition, it is the ALJ's responsibility to develop that information so as to address any inconsistency.  *See Dais v. Saul*, No. 18-CV-7309 (PKC), 2020 WL 1550556, at *7 (E.D.N.Y. Mar. 31, 2020) ("Where the report from claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques, the ALJ must seek additional evidence or clarification." (internal quotation marks and citation omitted)).  Here, the Court finds that "on remand the ALJ should endeavor to obtain enough information to determine whether the opinion[] of []Plaintiff's treating doctor [is] entitled to controlling weight."  *Murphy*, 2019 WL 4752343, at *7.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order.  The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 1, 2020
        Brooklyn, New York

21